UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NATHAN MAY, | : | Case No. 1:09-cv-704 |
| Plaintiff, | : | |
| | : | Weber, J. |
| vs. | : | Litkovitz, M.J. |
| | : | |
| HAMILTON COUNTY, OHIO, *et al.*, | : | |
| Defendants. | : | |

### REPORT AND RECOMMENDATION[1]

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against defendants Hamilton County, Ohio, Officer Kevin Scholz, and John and/or Jane Does 1-10 alleging a deprivation of his Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. (Doc. 1). Plaintiff's complaint alleges that while he was a pretrial detainee at the Hamilton County Justice Center, defendant Scholz slammed him into a wall thereby breaking his collar bone. This matter is before the Court on defendants' Hamilton County, Ohio and Kevin Scholz's motion for summary judgment (Doc. 52), defendants' proposed findings of fact and conclusions of law (Doc. 53), plaintiff's memorandum in opposition to defendants' motion for summary judgment (Doc. 62), and defendants' reply memorandum in support of their motion for summary judgment. (Doc. 63).

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## I. Undisputed Facts and Procedural History

Plaintiff offers his own affidavit as evidence which avers the following:

Plaintiff was arrested for a misdemeanor offense on September 27, 2007, and was booked into the Hamilton County Justice Center ("HCJC"). (Doc. 16, Ex. 2, May Aff., ¶ 3). During the intake process, plaintiff came into contact with defendant Scholz, who was a corrections officers assigned to the admissions office. (*Id.* at ¶ 4-5).[2] According to plaintiff, he asked defendant Scholz if he could use the phone to call his uncle who was employed at the HCJC so that he could arrange for his family to post his bond. (*Id.* at ¶ 6). Defendant Scholz denied plaintiff's request to use the phone and a verbal exchange occurred between plaintiff and defendant Scholz. (*Id.* at ¶ 7). Plaintiff was told to place his hands behind his back in order to be handcuffed. (*Id.*). Plaintiff complied with the request. (*Id.*). Defendant Scholz began escorting plaintiff out of the intake area. As they left the area, "Defendant Scholz violently slammed [plaintiff] into a wall and a metal doorframe severely breaking [his] collarbone." (*Id.* at ¶9).

Defendants' offer the following additional facts:

Deputy Wickman, another officer assigned to the admissions office, indicated that when plaintiff came into admissions, he was yelling, hollering, cussing and complaining that he would get his uncle to fire the deputies. (Doc. 46, Wickman dep. at 39, 40). At some point, plaintiff told defendant Scholz that "I'll have my uncle kill your Communist ass." (Doc. 44, Scholz dep.

---

[2] The admissions office is where inmates are showered, provided their jail uniforms, classified into a housing unit, and given an identification bracelet. (Doc. 38, Darby dep at 34, 50, 51).

at 83). Thereafter, Scholz testified that he believed plaintiff to be a physical threat and placed plaintiff in handcuffs in order to transfer him to a holding cell in an area known as Lincoln 22. (Doc. 44, Scholz dep. at 83).

As defendant Scholz was escorting plaintiff out of the admissions office to the smaller hallway that leads to the main hallway and Lincoln 22, plaintiff began yelling, squirming and squealing. (Doc. 44, Scholz dep. at 72, 98). Scholz asserts that plaintiff broke away from his grip and walked towards the doorway of a nearby office. (*Id.* at 134). Scholz regained control of plaintiff, plaintiff attempted to pull away again, and Scholz "grabb[ed] ahold of his shirt by the bicep arm area and just kind of fl[u]ng him over towards the wall." (*Id.*).

After the incident with defendant Scholz, plaintiff was transported to University Hospital, where he was diagnosed with a broken collar bone. His arm was placed in a sling and he was prescribed pain medication. (Doc. 56, May Medical Records at 103).

In his use of force report submitted after the incident, defendant Scholz stated that plaintiff "attempted to break custody and enter [the classifications] office." (Doc. 52, Ex. 3 at 151). Scholz further reported that he regained control of plaintiff who again "attempted to break free so [Scholz] placed him against the wall to regain control until Deputy Wickman arrived." *Id.*

Defendants further submit the testimony of Herb Hood, a use of force expert. (Doc. 49, Hood Deposition). Mr. Hood considered the affidavit of plaintiff May, the depositions of HCJC employees Lynette Darby, Richard Wickman and defendant Scholz as well as the written statements in the use of force report. (Doc. 49, Hood dep. at 123). Mr. Hood's opinion was that the use of either a door jam or wall to gain control of a handcuffed inmate who breaks control of

4

an officer is within industry standards and consistent with the training, policies and procedures of the Hamilton County Sheriff's department. (*Id.* at 149, 150).

Plaintiff filed this lawsuit on September 25, 2009, claiming that defendants participated in an excessive use of force in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution under the color of state law pursuant to 42 U.S.C. §1983. (Doc. 1). The complaint asserts that defendant Scholz is being sued in his individual and official capacities. As a result of plaintiff's failure to timely respond to defendants' discovery requests, defendants filed a motion for summary judgment. Defendants' motion was premised on the fact that their requests for admissions were deemed admitted, and therefore defendants were entitled to judgment as a matter of law. (Doc. 9). Thereafter, plaintiff filed a motion for additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Proedure and a motion to withdraw the admissions. (Docs. 11, 15, 16). The Court granted plaintiff's motion to withdraw the admissions and granted plaintiff's Rule 56(f) request thereby allowing limited discovery relating only to issues pertaining to qualified immunity. (Doc. 23). By agreement of the parties and approval of the Court, defendants' earlier motion for summary judgment was withdrawn. (Doc. 32).

This matter is now before the Court on defendants Hamilton County, Ohio and Kevin Scholz's motion for summary judgment. Defendant Hamilton County asserts that it is entitled to judgment as a matter of law because plaintiff has failed to identify a policy or custom that caused him to be subjected to excessive force. Defendants further assert that the undisputed facts do not establish that plaintiff's constitutional rights were violated, and that defendant Scholz is entitled to qualified immunity. Plaintiff asks the Court to deny defendants' motion, asserting that

5

genuine issues of material fact exist thereby precluding summary judgment.

**I. Qualified Immunity**

The Court must first resolve the issue of whether defendant Scholz is entitled to qualified immunity for his actions in this case. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation

6

could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier,* 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992).

## II. Qualified Immunity analysis on plaintiff's excessive force claim

*A. Constitutional Violation*

To decide whether plaintiff has presented evidence of a violation of his constitutional rights, the Court must first determine the source of the claimed right. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution all provide recourse for excessive force, depending "on the status of the Plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Id.*

If the plaintiff is a free citizen at the time of the incident, the Fourth Amendment and its reasonableness standard applies. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). That standard requires the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Id.* at 395-96. Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The Eighth Amendment standard focuses on the official's "obduracy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319-21. Lastly, if a plaintiff is neither a free citizen nor a convicted prisoner, the more generally applicable due process considerations of the Fourteenth Amendment apply. *Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001). Generally, the protections against excessive force afforded to a pretrial detainee against are analyzed under the Fourteenth Amendment. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 395). Here, it is undisputed that plaintiff was a pretrial detainee when he was allegedly subjected to the use of excessive force, and therefore his claims should be analyzed under the Fourteenth Amendment.

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n. 10. *See also Darrah*, 255 F.3d at 305-06 ( "[W]hile the Fourth Amendment 'objective reasonableness' analysis should be used in excessive force cases involving searches and seizures, where there is no search or seizure, the Supreme Court has held that the substantive component of the Fourteenth Amendment's due process clause is the most appropriate lens with which the view an excessive force claim."). "The substantive component of Fourteenth Amendment due process protects citizens against conduct by law enforcement officers that 'shocks the conscience.'" *United States v. Budd*, 496 F.3d 517, 529 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

"A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of *Graham*, in which excessive force can be found if the officer's actions, in light of the totality of the circumstances, were not objectively reasonable." *Darrah,* 255 F.3d at 306 (citing *Graham*, 490 U.S. at 396-97).

Plaintiff does not dispute that he was a pretrial detainee during the relevant period and therefore subject to the protections of the Fourteenth Amendment. Nonetheless, he asks the Court to analyze his claims under the Fourth Amendment and to follow the approach adopted by the Seventh Circuit, which has held that "[m]ost of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them."

9

*Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).³ Under either standard, plaintiff asserts that summary judgment is inappropriate, because when viewing the facts in a light most favorable to plaintiff, he has shown a violation of his constitutional rights. The undersigned agrees.

Applying a Fourth Amendment analysis to plaintiff's excessive force claim, the facts taken in a light most favorable to plaintiff are sufficient to establish a violation of his constitutional rights. As noted above, excessive force claims under the Fourth Amendment are analyzed pursuant to an objective reasonableness test. *Graham,* 490 U.S. at 395-96; *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994). This test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

---

³ Plaintiff's status as a pretrial detainee in the custody of the HCJC is further complicated by the fact the law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same. *See Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (citing *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]here is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does. . . .")). Additionally, in the context of a prison disturbance, many courts have found that the Eighth Amendment standard for excessive use of force applies to pretrial detainees. *See Fuentes v. Wagner*, 206 F.3d 335, 347-48 (3rd Cir. 2000) (holding that the Eighth Amendment cruel and unusual punishments standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance); *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (applying the Eighth Amendment standard to a pretrial detainee's excessive-force claim under the Fourteenth Amendment); *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993) (same); *Brown v. Acting Director of Metro Dade Correctional*, No. 08-15612, 2010 WL 27951, at *4 (11th Cir. Jan. 7, 2010) (same); *Sawyer v. Green,* 316 F. App'x 715, 717, 717 n. 2 (10th Cir. 2008) (same); *See also Stormer v. Koon*, Case No. 1:08-cv-813, 2010 WL 1257592, at *6 (S.D. Ohio March 30, 2010)(J. Beckwith) (applying the Eighth Amendment standard to a pretrial detainee's excessive-force claim under the Fourteenth Amendment). In *Griffin*, the Court noted that the law in this regard is unsettled and analyzed plaintiff's claim under the Eighth Amendment because the plaintiff did not seek to invoke the potentially broader protections of the Fourteenth Amendment. *Griffin*, 604 F.3d at 953. *See also Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (analyzing a pretrial detainee's excessive-force claim under the same standard as an Eighth Amendment excessive-force claim where the detainee did not seek to invoke "any safeguards the Fourteenth Amendment provides beyond those it shares with the Eighth Amendment"). Here, however, both parties assert that plaintiff's claims should be evaluated under the Fourteenth Amendment and do not ask the Court to engage in an evaluation of plaintiff's excessive force claim under the Eighth Amendment.

actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. The "reasonableness" of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

For purposes of summary judgment, the Court must accept the plaintiff's version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.,* 477 U.S. at 251-52. Under plaintiff's version of the facts, plaintiff was handcuffed when defendant Scholz "violently slammed [him] into the wall and metal doorframe severely breaking his collarbone." (Doc. 16, Ex. 2, May Aff. ¶ 9). Defendants maintain that the use of force was reasonable under the circumstances because plaintiff failed to comply with defendant Scholz's orders, was resisting his escort, and attempted to enter an office containing civilian employees. However, George Williams, an HCJC employee assigned to the office plaintiff allegedly attempted to enter, testified that he recalled plaintiff yelling as he was taken past the classification office, but plaintiff was not being dragged and that "as far as [he] could tell," plaintiff was "accepting the escort." (Doc. 47, Williams Dep. at 33).

The Sixth Circuit has held that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional. *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir. 1988). Viewing the evidence in the light most favorable to plaintiff, as required on summary judgment, a reasonable juror could find that plaintiff did not pose a security threat to defendant Scholz and others in the area. In the absence of such a threat, defendant Scholz cannot argue that he acted reasonably under the Fourth Amendment. Thus, plaintiff's facts, if true, would indicate that the force used, which resulted in a broken bone, exceeded that reasonably necessary

to secure a handcuffed plaintiff. *See Clark v. Gonzalez*, No. 96-41146, 1997 WL 681275, at *2-3 (5th Cir. Oct. 23, 1997) (holding that slamming a prisoner into walls was an excessive use of force when the prisoner was handcuffed and did nothing to provoke the officers).

The Court notes that the credibility of plaintiff's statements is an issue for the jury, and a jury certainly would be entitled to credit that testimony. The Court cannot assume that a jury would disbelieve plaintiff unless his testimony is so unbelievable or so discounted by other evidence that a reasonable jury could not believe it. The Court does not find other evidence creating that result. To the contrary, defendant Scholz testimony confirms that he "flung" plaintiff against the wall. (Doc. 44, Scholz dep. at 134). Furthermore, it is undisputed that plaintiff suffered a broken collarbone as a result of the incident, indicating more than a *de minimus* use of force. (Doc 56, May Medical Records at 103).[4] Accordingly, the facts viewed in the light most favorable to plaintiff show defendant Scholz's use of force against him was excessive and that a constitutional violation has occurred. *Saucier*, 533 U.S. at 201.

Furthermore, applying the "shocks the conscience" test under the Fourteenth Amendment, the more difficult standard for the plaintiff to meet, the above facts, taken in a light most favorable to plaintiff, are sufficient to establish at least a genuine disputed fact as to whether defendant Scholz applied excessive force that amounts to punishment.

---

[4] Defendants appear to question the source of plantiff's injury, noting that plaintiff indicated that he injured his shoulder playing football. (Doc. 52 at 3 (citing Doc. 56 at 5)). Specifically, on October 6, 2008, plaintiff was seen by Dr. Robert Berger complaining of right clavicle pain. Doc. 56 at 5-5. Plaintiff stated that the injury resulted from playing football. *Id*. However, the incident with defendant Scholz and plaintiff occurred on September 27, 2007, a year before plaintiff was seen by Dr. Berger. Moreover, it is undisputed that after the incident with defendant Scholz, plaintiff was taken to University Hospital where he was diagnosed with a broken collarbone. There is no evidence in the record that plaintiff suffered from any shoulder injury prior to September 27, 2007.

### B. Clearly Established Right

In terms of the second prong of the qualified immunity analysis, whether the violation involved a clearly established constitutional right of which a reasonable person would have known, a pretrial detainee's right to be free from excessive force amounting to punishment is clearly established law. *Leary*, 528 F.3d at 443; *Phelps*, 286 F.3d at 300. Although defendants argue that there is no specific caselaw establishing that it is a constitutional violation to force a handcuffed inmate against a wall to regain control of the inmate, the law is clear that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional. *McDowell,* 863 F.2d at 1307. *See also Bultema v. Benzie Co.*, 146 Fed. App'x 28, 35-36 (6th Cir. 2005) ("when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed").

Finally, plaintiff has offered sufficient evidence showing that defendant Scholz's use of force was objectively unreasonable in light of the clearly established constitutional rights. *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691. The evidence establishes that plaintiff (while handcuffed) was thrown against the wall by Officer Scholz causing a serious injury to plaintiff's shoulder area. Plaintiff was transported to the hospital where he was diagnosed with a broken collarbone. A reasonable officer would not believe that throwing a handcuffed pretrial detainee against the wall and breaking his collarbone is an objectively reasonable use of force.

Despite being handcuffed, defendants argue that Scholz's use of force against plaintiff was reasonably necessary in order to control plaintiff, who was yelling, squirming, and resisting defendant Scholz's attempts to control him. Defendant Scholz testified that as he escorted plaintiff out of the admissions area, plaintiff attempted to enter a doorway to an office and broke

away from Scholz's grip. (Doc. 44, Scholz dep. at 72, 134, 136, 140). In an attempt to regain control of plaintiff, defendant Scholz grabbed "ahold of [plaintiff's] shirt and just kinda fl[u]ng him over towards the wall." (Scholz dep. 134).

Plaintiff, however, asserts that genuine issues of material fact exist in the record as to whether plaintiff was failing to comply with defendant Scholz orders and resisting his escort. (*See* Williams Dep. at 33). The undersigned agrees.

In light of the foregoing, the undersigned finds that there are genuine disputes as to material facts regarding whether plaintiff's actions created a threat to defendant Scholz and other employees at HCJC at the time he was being escorted to Lincoln 22 by defendant Scholz and whether defendant Scholz's use of force was reasonable under the circumstances. Since the issue of whether plaintiff was a threat and/or his actions provoked the use of force applied by Scholz (which resulted in a broken collarbone) determines whether defendant Scholz's use of force was objectively reasonable, summary judgment on the basis of qualified immunity should be denied. *Rich*, 955 F.2d at 1095 (Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns.").

### III. Plaintiff's claims against defendant Hamilton County, Ohio

Defendants also seeks summary judgment on behalf of defendant Hamilton County, Ohio asserting that plaintiff has failed to identify a practice, policy, procedure, or custom of the Hamilton County Sheriff's department which caused him to be subjected to excessive force. *See Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978) (governmental entity can only be held liable under § 1983 if its "official policy" was the source of the constitutional injury).

14

Plaintiff argues that defendants' motion is premature as plaintiff has not been given the opportunity to conduct discovery as to Hamilton County's practices and policies. As noted above, in light of the defendant Scholz invocation of qualified immunity, the Court previously ruled that plaintiff was permitted to "conduct discovery tailored specifically to the defense of qualified immunity." (Doc. 23). Defendants contend that although discovery was so limited plaintiff was given the opportunity to conduct discovery as to the County's policies and procedures. Defendants' assertion is not well-taken, as any discovery outside of the realm of qualified immunity would have violated the Court's July 29, 2010 Order.

Hamilton County's motion for summary judgment is therefore premature and should be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendants' motion for summary judgment (Doc. 52) should be **DENIED** *in toto*.

Date: 8/3/2011

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHAN MAY,           :   Case No. 1:09-cv-704
    Plaintiff,    :
                      :   Weber, J.
vs.                   :   Litkovitz, M.J.
                      :
HAMILTON COUNTY, OHIO, et al.,  :
                      :
    Defendants.   :

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Am,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).